NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER

Electronically Filed
Intermediate Court of Appeals
CAAP-23-0000022
15-OCT-2024
08:05 AM
Dkt. 99 SO

NO. CAAP-23-0000022

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee,
v.
MYRON POSOA FILIPE, Defendant-Appellant

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(CASE NO. 1FFC-20-0001120)

### SUMMARY DISPOSITION ORDER
(By: Hiraoka, Presiding Judge, Wadsworth and Guidry, JJ.)

Defendant-Appellant Myron Posoa Filipe (**Filipe**) appealed from the Judgment of Conviction and Sentence (**Judgment**) entered by the Family Court of the First Circuit (**family court**) on November 15, 2022.[1] On December 4, 2020, Filipe was indicted on one count of Sexual Assault in the First Degree[2] in violation

---

[1] The Honorable Kevin T. Morikone presided.

[2] The indictment stated, in relevant part,

(continued . . .)

of Hawaii Revised Statutes (**HRS**) § 707-730(1)(b) (2014).[3] Filipe pleaded not guilty, and the matter proceeded to a jury-waived trial. On June 30, 2022, the family court found Filipe guilty as charged. Filipe was sentenced to a term of twenty years imprisonment.

Filipe raised five points of error on appeal, contending that the family court erred: (1) "where it denied [Filipe's] motion to allow evidence of sexual activity of the [CW] and where it denied [Filipe's] motion to suppress evidence"; (2) "when it relied on the DVD police interview footage to determine whether [Filipe] invoked his right to counsel rather than relying on the official transcripts of said interview"; (3) "where it stated it would discern admissibility and inadmissibility within the transcripts/dvd of the interview of [Filipe] at police headquarters rather than specifically

---

[2](. . .continued)
    On or about June 1, 2016, to and including June 30, 2016, in the City and County of Honolulu, State of Hawaiʻi, MYRON POSOA FILIPE, being the parent or guardian or any other person having legal or physical custody of [complaining witness (**CW**)], did knowingly engage in sexual penetration with [CW], who was less than fourteen years old, by inserting his finger into her genital opening, thereby committing the offense of Sexual Assault in the First Degree, in violation of Section 707-730(1)(b) of the Hawaiʻi Revised Statutes.

[3]    HRS § 707-730(1)(b) (2014) provides, in pertinent part, "A person commits the offense of sexual assault in the first degree if . . . (b) The person knowingly engages in sexual penetration with another person who is less than fourteen years old[.]"

detailing which statements it was relying on and which were not relied upon due to inadmissibility"; (4) "where it overruled [Filipe's] objection to [the State] attempting to rehab bad answers by the [CW] even though the [CW] had already answered the very same questions asked of her (asked and answered)"; and (5) "by denying [Filipe's] various motions for judgment of acquittal, and by sustaining [Filipe's] conviction despite insufficient evidence supporting the requisite state of mind."

On February 14, 2024, this court entered a summary disposition order, in which we concluded that the evidence adduced by the State at trial did not support that Filipe had the requisite state of mind to be convicted of Sexual Assault in the First Degree. Consistent with our conclusion, we reversed the family court's Judgment, and declined to consider the remaining four points of error on appeal. Judgment on appeal was entered on March 12, 2024, and the Hawai'i Supreme Court accepted the State's Application for Writ of Certiorari. In a memorandum opinion filed on August 13, 2024, the Hawai'i Supreme Court vacated our judgment on appeal, and remanded this case for our consideration of the remaining four points of error raised by Filipe.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to

the arguments advanced and the issues raised by the parties, we conclude that Filipe's remaining four points of error lack merit. We thus affirm the family court's Judgment, as follows:

(1) Filipe contends that the family court erred by denying his motions to introduce evidence of CW's sexual history and to suppress evidence of statements he had made to police detectives Keneth ("Kenny") Toriki (**Detective Toriki**) and Linda Robertson (**Detective Robertson**) during police interviews.

With regard to the family court's denial of Filipe's motion to introduce evidence,

> Different standards of review must be applied to trial court decisions regarding the admissibility of evidence depending on the requirements of the particular rule of evidence at issue. When application of a particular evidentiary rule can yield only one correct result, the proper standard for appellate review is the right/wrong standard. However, the traditional abuse of discretion standard should be applied in the case of those rules of evidence that require a "judgment call" on the part of the trial court.

State v. Williams, 149 Hawai‘i 381, 391-92, 491 P.3d 592, 602-03 (2021).

The record reflects that Filipe failed to offer any evidence supporting his allegation that the "passage of twenty months from the date of the alleged offense to said examination [of CW] may suggest sexual activity of [the CW] with other persons." We thus conclude that the family court did not err in finding that Filipe failed to make a sufficient offer of proof, and in denying Filipe's motion to introduce evidence of the CW's

sexual history on that basis.[4]  State v. Pulse, 83 Hawaiʻi 229,

248, 925 P.2d 797, 816 (1996) (the purpose of an offer of proof

"is to provide an adequate record for appellate review and to

---

[4]      The family court (the Honorable James S. Kawashima presided) denied, without prejudice, Filipe's motion to introduce evidence as lacking a sufficient offer of proof, explaining:

> I'm prepared to deny the motion based solely on the offer of proof in the current motion as insufficient, so if this 20-month delay, in conjunction with other evidence then becomes relevant, or evidence of actual past sexual behavior, then you can renew the motion with that.  But as itself, I do not find it sufficient.  Motion will be denied.
>
> . . . .
>
> I draw the following five conclusions of law:
>
> 1. Defendant's motion satisfies notice to [CW] as required by [Hawaii Rules of Evidence] **HRE** 412(c)(1).
>
> 2. Pursuant to standard jury instructions, quote, "a doubt which has no basis in the evidence presented, or the lack of evidence, or reasonable inferences therefrom, or a doubt which is based upon imagination, suspicion or mere speculation or guesswork is not a reasonable doubt."
>
> And from that I draw Conclusion 3.  Absent mere speculation or guesswork, [Filipe's] offer of proof, the 20-month delay between offense and examination is not and cannot be considered or presented as evidence of, quote, "Past sexual behavior with persons other than the accused," end quote, as a source of [CW]'s physical trauma.
>
> 4. A defendant's offer of proof does not constitute or contain evidence described by HRE 412([b])(2)(A); and, finally
>
> 5. Lacking evidence described by HRE 412(b)(2)(A), defendant's motion does not require any further hearing under HRE 412(c)(1).
>
> On those grounds, the motion is denied.
>
> And, again, this is solely on the basis of the offer of proof contained in the current iteration of the motion.

Filipe did not file a renewed motion to introduce evidence.

assist the trial court in ruling on the admissibility of evidence") (cleaned up).

(2) We next review Filipe's contention that the family court erred in denying his motion to suppress the statements that he made to Detectives Toriki and Robertson during their respective interviews of Filipe on February 6 and 7, 2018. State v. Hewitt, 153 Hawaiʻi 33, 40, 526 P.3d 558, 565 (2023) ("An appellate court reviews a ruling on a motion to suppress de novo to determine whether the ruling was right or wrong.") (cleaned up). Filipe contends that, due to severe physical pain caused by gout, and because he asserted his right to an attorney, he did not knowingly, voluntarily, or intelligently waive his Miranda rights during the interview and polygraph examination conducted by Detective Toriki, or the interview conducted by Detective Robertson.

The record reflects that both Detectives Toriki and Robertson informed Filipe, prior to questioning Filipe on February 6 and 7, 2018, of his constitutional right to counsel. Both detectives testified, at the hearing on the motion to suppress, that they informed Filipe of his right to have an attorney present, and that Filipe knowingly and intelligently waived that right. Multiple HPD-81 forms, signed by Filipe and admitted into evidence as State's Exhibits 1, 3 and 5,

6

demonstrate Filipe's understanding of the nature of his constitutional right to counsel, and that Filipe acknowledged that he did not want an attorney present during the interview.

The audio-visual recordings of the detectives' interviews of Filipe, and the written transcripts of those interviews,[5] further demonstrate that Filipe knowingly and intelligently waived his right to counsel.

---

[5]    The State's Exhibit 4 reflects the following exchange between Detective Toriki and Filipe on February 7, 2018,

[DETECTIVE TORIKI] Q

    Before I ask you any questions you must understand your rights.  You have the right to remain silent.  You don't have to say anything to me or answer any of my questions.  Anything you say may be used against you at your trial.  You have the right to have an attorney present while I talk to you.  If you cannot afford an attorney, the court will appoint one for you, prior to any questioning.  If you decide to have--if you decide to answer my questions without an attorney being present, you still have the right to stop answering at any time.  'Kay Myron, do you understand what I have told you?

[FILIPE] A  Yes.

Q    Okay.  Go ahead initial by your response.
    'Kay.  Myron, do you want an attorney now?

A    Hmm, no.

Q    Okay.  Go ahead initial by no.  'Kay.  Would you like to tell me what happened?

A    Yes.

    The State's Exhibit 2 reflects the following exchange between Detective Robertson and Filipe on February 6, 2018,

[DETECTIVE ROBERTSON] Q

(continued . . .)

[5](. . .continued)

> Before I ask you any questions you must understand your rights.  You have a right to remain silent.  You don't have to say anything to me or--or answer any of my questions.  Anything you say may be used against you at your trial.  You have the right to have an attorney present while I talk to you.  If you cannot afford an attorney the court will appoint one for you prior to any questioning.  If you decide to answer my questions without an attorney being present you still have the right to stop answering at any time.  Do you understand everything that I just read to you?

[FILIPE] A  Yes, ma'am.

Q  Do you have any questions about any of it?  Okay.

A  No, ma'am.

Q  If you can initial right there that you understand what I have told you.  If you can put your initials next to the yes, please?  And would you like an attorney now?

A  Um, what does that mean?

Q  Do you want to speak with an attorney before you talk to me?

A  No.

Q  You don't want an attorney right now?

A  (No audible response.)

Q  Do you want someone to represent you?

A  I'm not sure.

Q  Okay.  Would you like to consult with an attorney or a public defender?

A  No, ma'am.

Q  You don't want to talk to them first?

A  Do I have to?

(continued . . .)

The record also reflects that Detectives Toriki and Robertson questioned Filipe about his level of physical gout pain, and his capacity, given that pain, to continue with the

---

[5](. . .continued)

Q No, you don't have to.  I'm asking you if you want to.  It's your right to have a lawyer present here while I talk to you.

A No, ma'am.

Q Okay, and are you waiving that right to have a lawyer while you're talking with me right now?

A I'm not sure.

Q Okay.

A You know, I guess--I guess.

Q Okay.  Are you or aren't you?  I mean 'cause if you want one I can take you downstairs and we can get that telephone call to the public defender's if you don't--

A Um-hmm (Affirmative).

Q --have your own lawyer.

A No, (unintelligible) no, ma'am.

Q Okay.  Are you sure you don't want a lawyer present right now?

A (No audible response.)

Q And the only reason I'm asking you again is because you said you were unsure before.

A No, ma'am.

Q No, you don't want a lawyer, okay.  If you can initial next to the (unintelligible) or next to the no, please.  And would you like to tell me what happened?

A Yes, ma'am.

interview.  Filipe affirmatively represented to Detectives Toriki and Robertson that he was able to continue with the interview and answer their questions.

We conclude, on this record, that the family court did not err in denying Filipe's motion to introduce evidence, and his motion to suppress evidence.

(3) Filipe contends that the family court erred by considering both the audio-visual recordings of the police interviews, and written transcripts of those interviews, rather than confining its consideration to the transcripts only. Filipe specifically contends on appeal that "any ambiguity between the video and the transcripts should have been resolved in favor of [Filipe] and should have been resolved in favor of the official transcript."

The audio-visual recordings of the detectives' interviews of Filipe, and the written transcripts of those interviews, were admitted into evidence as the State's Exhibits 2, 4, 6, 7, 8, and 9.  The record reflects that the family court reviewed, inter alia, both the audio-visual recording and written transcript of Detective Robertson's interview, to clarify that Filipe affirmatively waived his right to counsel:

> 6.  At hearing herein, particular focus was given to an utterance by [Filipe] memorialized in Exhibit 2 (the transcript), page 14, line 4, that reads: "Um-hmm (Affirmative)."  It is undisputed that [Filipe] did not actually say, "Affirmative."

7. What Exhibit 2 identifies as "Um-hmm" was inserted into Detective Robertson's otherwise unbroken explanation that can be found on Exhibit 7 during an 11-second interval from timestamp 18:41:03 to timestamp 18:41:14. In Exhibit 7, that explanation, with bracketed clarifications and insertions to show [Filipe's] input, presents as follows:

> **Okay. Are you or aren't you** [waiving your right to an attorney]? **I mean 'cause if you want one I can take you downstairs and we can get that telephone call to the public defender's** [Defendant shakes his head and says, "no"] **if you don't** [here Exhibit 2 inserts Defendant's "um-hmm," but no such utterance is evident in Exhibit 7] **have your own lawyer.**

8. Immediately after this 11-second interval, the very next words from [Filipe's] mouth are, "nah, no ma'am."

9. Exhibit 2's insertion of "Um-hmm (Affirmative)," is deemed factually inaccurate because:

   a. Exhibit 2 is an unofficial transcript prepared from Exhibit 7;

   b. Exhibit 2 inserts "Um-hmm (Affirmative)," at a point where, during actual video playback, Defendant audibly said, "no," and visibly shook his head side to side;

   c. Exhibit 2's insertion, "Um-hmm (Affirmative)," cannot actually be seen or heard during actual video playback; and

   d. Defendant's demeanor, actions and utterances during the entirety of Exhibit 7 confirm a considered, initially tentative but ultimately unambiguous intention to waive his right to counsel.

The family court's order denying Filipe's motion to suppress states that the transcript was "an unofficial transcript prepared from Exhibit 7 [the video]."

We conclude that the family court had discretion to weigh and consider the evidence presented. The family court, as fact finder, utilized the audio-visual recordings to "make

11

evaluations of clarity and the extent to which [Filipe] appeared to be affected by pain."[6]  The family court noted, with regard to the transcripts and audio-visual recordings, that "both have weight."  We conclude that the family court did not err by considering the audio-visual recordings in evidence.

(3) Filipe contends that the family court erred by stating it "believes it is competent in discerning what would be admissible or inadmissible evidence, even within the transcript themselves" and "if the [family court] does come across that, the [family court's] going to make its decision based upon the credible and reliable evidence that the [family court] believes is proper for the [family court] to consider."  Filipe contends that this "amounted to the [family court] finding that all statements in this vein by police were properly admittable at trial."

Filipe's contention that the family court could not properly determine the credibility of witness statements lacks merit.  "[W]here a case is tried without a jury, it is presumed that the presiding judge will have disregarded the incompetent evidence and relied upon that which was competent."  State v.

---

[6]    As discussed supra, the family court reviewed the audio-visual recordings of the Detectives, Toriki and Robertson, interviewing Filipe in order to discern whether Filipe made a valid waiver of his right to counsel. The family court informed counsel that, in the absence of evidence that Filipe "unequivocally demanded a lawyer or asked for a lawyer," it would consider the audio-visual recordings in evidence.

Antone, 62 Haw. 346, 355, 615 P.2d 101, 108 (1980) (citations omitted).

(4) Filipe contends that the family court "erred where it overruled [Filipe's] objection to [the State] attempting to rehab bad answers by the [CW] even though the [CW] had already answered the very same question asked of her (asked and answered)."  Filipe specifically challenges the following exchange between the State and the CW:

> [DPA] Q  Now when you were twelve years old, were you bigger or smaller than your mom?
>
> [CW] A  I don't recall.
>
> Q     Were you bigger or smaller than you are now?
>
> A     I was bigger.
>
> Q     Okay.  You're 18 years old now?
>
> A     Yes.
>
> Q     When you were twelve were you bigger or smaller than you are now?
>
> [Defense counsel]:  Objection.  Asked and answered.
>
> THE COURT:  Overruled.
>
> [CW]:  Smaller.

On this record, we conclude that the family court did not abuse its discretion in overruling Filipe's "asked and answered" objection.  State v. Kassebeer, 118 Hawai‘i 493, 504, 193 P.3d 409, 420 (2008) ("[Appellate courts] generally review[] the circuit court's evidentiary rulings for an abuse of discretion,

unless there can be but one correct answer to the question of admissibility, in which case [the] court's review is *de novo*.").

Moreover, the record reflects that Filipe's witness, Loralei Evans, testified on cross-examination that CW was smaller at age twelve than at age eighteen. We thus conclude that the family court's overruling of Filipe's "asked and answered" objection, which led to the admission of evidence that the CW was "smaller" when the alleged assault occurred, was, in any event, harmless beyond a reasonable doubt. See State v. Haili, 103 Hawai'i 89, 100, 79 P.3d 1263, 1274 (2003) (citation omitted) ("Even if the trial court erred in admitting evidence, a defendant's conviction will not be overturned if the error was harmless beyond a reasonable doubt.").

For the foregoing reasons, we affirm the Judgment of Conviction and Sentence entered by the family court on November 15, 2022.

DATED: Honolulu, Hawai'i, October 15, 2024.

On the briefs:

Kai Lawrence,
for Defendant-Appellant.

Stephen K. Tsushima,
Deputy Prosecuting Attorney,
City and County of Honolulu
for Plaintiff-Appellee.

/s/ Keith K. Hiraoka
Presiding Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Kimberly T. Guidry
Associate Judge